# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. ROSALINDA IBARRA, AS THE SPECIAL ADMINISTRATRIX OF THE ESTATE OF JORGE MARTINEZ, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-CV-00598- TCK-SH |
| 1. CHEYENNE LEE, <br> 2. SCOTT WALTON, Sheriff of Rogers County in his Official Capacity, and <br> 3. THE BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANT CHEYENNE LEE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Cheyenne Lee and hereby files this Reply Brief in Support of his Motion for Summary Judgment.

                                                                                                                                            Respectfully submitted,
Thomas A. LeBlanc, OBA #14768
tleblanc@bestsharp.com
Emily K. Wilson, OBA #33091
ewilson@bestsharp.com
**BEST & SHARP**
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
*Attorney for Defendants*
*Cheyenne Lee and The Board of*
*County Commissioners of Rogers County*

March 24, 2022

**DEFENDANT CHEYENNE LEE'S REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Cheyenne Lee and hereby files this Reply Brief in Support of his Motion for Summary Judgment. In light of Plaintiff's Response Brief, the Court should find that Defendant Lee is entitled to qualified immunity. Defendant would state:

**I.   THE UNDISPUTED FACTS**

Plaintiff repeatedly claims that she is "disputing" Defendant's facts, but the Court will note that many of her responses do not, in fact, dispute the stated fact. And, on certain material facts related to this case, Plaintiff's attempt to identify "disputed" facts should be rejected:

> **Undisputed Fact 12**: It is undisputed that Martia Martinez and Isidra Mitchell <u>allowed</u> Lee to enter the house to serve the protective order. Plaintiff attempts to controvert this fact by stating that Mitchell never "invited" Lee in the house, and that none of her actions indicated that he was "allowed" to enter the house. This is false. Mitchell stated that she opened the door for Lee and allowed Lee to enter the house. (Dkt. #50-5 at 102:4-9). Maria Martinez rendered identical testimony. (Dkt. #50-3 at 33-34; Dkt. #50-11 at 19:6-9). Plaintiff's own expert agreed that Lee entered the home lawfully. (Dkt. #50-12 at 35-36). The Court should disregard Plaintiff's contrary (new) affidavits.[1]
>
> **Undisputed Fact 14**: Plaintiff has admitted that Martinez, at the outset, would refuse to comply with the protective order. This is due to the fact Martinez was aware that the Sheriff's Office was looking for his children. Undisputed Fact 4.
>
> **Undisputed Fact 16:** Plaintiff does not completely dispute the cited facts related to Marinez's demeanor but claims that Martinez did not act in any "threatening manner." However, the undisputed facts show that a reasonable officer could conclude otherwise. The testimony, *from Plaintiff's own witnesses*, shows that:
>
> - Maria Mitchell and Isidra Mitchell <u>knew</u> Martinez would be angry, would wake up cussing, throwing a fit, and be in a bad mood. (Dkt. #50-3 at 33-34; Dkt. #50-5 at 73:21-25; 75:5-11).
> - And, indeed, when he woke up, Martinez <u>was cursing and acting wild</u>. (Dkt. #50-3 at 35:5-12; Dkt. #50-75:5-11).
> - Martinez <u>jumped out of bed</u> and shouted out, what the F are you doing in my house, also pointing at his face, what the F are you doing in my house, get out of my house. (Dkt. #50-5 at 57:4-10).

---

[1] The Court has the authority to disregard an affidavit that is drafted to create a sham fact issue. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

1

- Martinez was <u>jumping up and down</u>. (Dkt. #50-3 at 35:5-12).
- Martinez was <u>acting crazy</u>. (Dkt. #50-11 at 20-21).
- Martinez was <u>cussing at the officer</u>, saying "Get the F out of my house." (Dkt. #50-3 at 35:14-15).
- Martinez was calling Lee <u>"bitch and all types of names."</u> (Dkt. #50-11 at 21:17-18).
- Martinez was <u>jerking his hand forwards and backwards</u>. (Dkt. #50-11 at 20:15-24).
- Martinez <u>refused to accept service of the protective order</u>. (Dkt. #50-5 at 79:2-3).
- Martinez may have been coming down from a drug high. (Dkt. #58 at pp. 19-20) (noting Martinez was "possibly coming down from a drug high").

**Undisputed Facts 19, 20**: It is undisputed that (1) Lee told Martinez he was under arrest multiple times; (2) Martinez resisted arrest; and (3) Martinez pulled away from Lee and ran into the hall. (Dkt. #50-5 at 57:10-17). In addition, Lee grabbed Martinez's arm in attempt to arrest him, struck Martinez several times and attempted to gain compliance, but to no avail. *See* Undisputed Fact No. 20.

**Undisputed Fact 21**. Plaintiff contends, in new affidavits, that Martinez was not reaching for a nightstand, but these new allegations do not controvert the fact that Lee *reasonably believed* Martinez was doing so. Maria and Mitchell did not witness the entire struggle and were unaware of all of Martinez's conduct. Martinez's admitted resistance to arrest and action in running to the hall would give rise to a reasonable inference that Martinez was searching for a weapon.

**Undisputed Fact 22.** This fact notes that they physically fought each other in the hallway for several minutes as Martinez continued to resist. Plaintiff does not dispute this fact, but claims that Martinez did not punch, grab, or push Lee during this process. Lee testified that Martinez *did* assault and batter him, and it undisputed that Martinez pulled away from Lee, and Lee and Martinez were struggling and fighting and then fell into the next room. (Dkt. #50-11 at 27:14-18; Dkt. #50-5 at 82:2-7). Mitchell was in a different room (to retrieve her phone) when she heard them both fall to the floor, which suggested that they both went to the floor at the same time. (Dkt. #50-5 at 58:8-10; 81-82). Hence, it is undisputed that they were engaged in a struggle and fighting with each other as Lee attempted to arrest Martinez. If Martinez was not resisting, they would not have fallen to the floor and then struggled into the bedroom. If Martinez was not resisting, he would've had handcuffs on both hands.

**Undisputed Fact 24.** It is undisputed that Mitchell attempted to interfere with the arrest, as she did not believe Lee was going to arrest Martinez. Plaintiffs' expert agreed this was probably criminal conduct (obstruction). (Dkt. #50-12 at 41:9-21).

**Undisputed Facts 25-26**: It is undisputed that Mitchell intentionally prevented Lee from obtaining his radio *during* Lee's struggle with Martinez, and instead attempted to record the encounter on her cell phone (per the request of Martinez). Mitchell admitted as much. (Dkt. #50-5 at 102:18-22; 103-104; 58:14-15). This amounts to

2

collusion between Mitchell and Martinez to prevent Lee from summoning help *during* Lee's struggle and attempt to subdue/arrest Martinez.

**Undisputed Fact 27**. It is also undisputed that Maria Martinez refused to give Lee his radio when requested.

**Undisputed Fact 28**. Plaintiff does not dispute that Lee got one handcuff on Martinez's left wrist and used a pain compliance technique, to no avail. Martinez continued to resist.

**Undisputed Fact 29.** Plaintiff does not dispute that Martinez was able to get away from Lee during this struggle. Plaintiff argues that Martinez never punched Lee in the face/head area or "anywhere else at any time during the incident." This is a false statement, considering all parties agree that Martinez was highly upset, agitated and acting "crazy"; intentionally refused to accept service of the protective order; cursed at Lee; resisted arrest; turned (or "maneuvered") to run into the hallway; engaged in a fight and struggle with Lee whereupon they both fell upon the floor; and the struggle continued to the back room where <u>Martinez was able to get away from Lee and had a handcuff as a weapon</u>. The assertion that Martinez was a passive player in this intense struggle simply defies credulity. Plaintiff goes so far as to submit new assertions that Mitchell and Maria "never observed" Lee urinate on himself. It is unclear how or when Mitchell and Maria could have observed his urination. Maria was <u>not</u> in the back room of the house at the time of the shooting. These new affidavits show the extremes to which Plaintiff will go to create a "fact question."

**Undisputed Facts 30-35.** One of the key issues in the case is whether Lee, at the time of the shooting, was standing over Martinez while Martinez was laying on his back (as contended by Plaintiff). <u>It is now undisputed that Plaintiff's allegations on this issue are false</u>. It has been scientifically and mathematically determined that Martinez <u>could not have been laying on the floor when shot as alleged by Plaintiff</u>. Undisputed Fact 30. Plaintiff does not dispute this fact with any evidence. Instead, Plaintiff cites portions of Dr. Omalu's "declaration," but his opinion testimony does not controvert this fact. He had no clue on where Martinez was positioned at the time of the shooting and was willing to make up ridiculous theories during the midst of his deposition to explain the fact that the bullet was found in the wall, and not the floor. (Dkt. #49, Motion to Exclude Testimony of Dr. Omalu at 11-14, 16-19). The importance of these undisputed facts cannot be overstated, since they show that Plaintiff's theory is false and that Martinez had escaped from Lee and had taken an aggressive, crouching stance against Lee in the small confines of the back bedroom, even while Mitchell colluded with Martinez to prevent Lee from summoning help.

**Undisputed Facts 39-40.** Plaintiff does not dispute that the DA of Rogers County and the RCSO Use of Force Review Board found that the use of force was justified; that a reasonable officer would have concluded that Martinez posed a real and significant threat to Lee's safety; and that Lee acted reasonably and in accordance with RCSO's policies and procedures.

## II.     ARGUMENTS AND AUTHORITIES

**<u>Plaintiff has abandoned Claim III (denial of medical care)</u>**.  And, as shown below, Lee is entitled to qualified immunity because he did not unlawfully arrest/detain Martinez; he did not use excessive force on Martinez; and the relevant law was not clearly established.  Finally, Lee is entitled to summary judgment on the remaining state law claims.

**A.     The False Arrest/Detention Claim is Without Merit.**  With respect to threatening a violent act, Plaintiff argues that Martinez never made verbal threats "towards anyone at any point during the incident" and that there was no "probable cause" to arrest him for this crime.  This argument is contrary to the words of Martinez and his demeanor, as confirmed by all witnesses.  Mitchell and Maria *knew* that he would be angry and upset and Martinez also assured Mitchell (at least twice) that he would not let "no strangers see my kids." (Dkt. #50-5 at 55:6; 55:19).  When Martinez heard Lee, he immediately jumped out of bed; began cursing and acting wild; began cussing at the officer and calling him "bitch"; jerking his hands back and forth in the air and making highly offensive comments.  Lee also had a reasonable belief that Martinez was cursing and making threats.  Undisputed Fact No. 19.  Lee had sufficient facts to objectively conclude, based on Maritnez's words and conduct, that Martinez was threatening a violent act.[2]

Second, a reasonable officer would conclude that Martinez was Obstructing an Officer in violation of 21 O.S. §540.  Plaintiff does not dispute the material facts related to this issue.  Lee had been directed to serve the protective order on Martinez pursuant to Judge Pazzo.  Undisputed Fact No. 7.  When Lee attempted to serve the protective order, Martinez immediately became irate, starting cussing at Lee, and refused to accept the protective order. (Dkt. #50-5 at 79:2-3; 57:2-9).  This is clearly an interference with Lee's legal obligation to serve the protective order.

---

[2]The protective order itself was issued because Martinez had threatened "imminent physical harm" to Chapa. (Dkt. #50-2 at 3).  Plaintiff does not dispute that Martinez had engaged in similar conduct against Plaintiff (his own sister) and her family. (Dkt. #50-4 at 52-55; 56; 60-67).  He pulled a knife on her and threatened to kill her and her family. (*Id.*).

4

Further, since Lee would also be required to take custody of the children, Martinez's conduct would also amount to an effort to obstruct Lee from performing his obligations in that regard.

Plaintiff contests the argument that probable cause existed to arrest Martinez for violating the protective order. 22 O.S. §60.6. The protective order prevented Martinez from having any contact with Sara Chapa and the children. (Dkt. #50-7 at 2). The children were in the house at the time of the incident. Hence, at the time that Lee provided Martinez with the protective order, Lee has a reasonable belief that Martinez was violating – and would continue to violate – the protective order, i.e., by continuing to maintain contact with the children in the house and by preventing Lee from removing the children from the household. And, in fact, Martinez made it clear that he would not allow a "stranger" to "see" his sons. (Dkt. #50-5 at 55:6; 55:19). Because Martinez was intent on preventing Lee from seeing his children, this establishes probable cause to believe Martinez was in violation of the protective order.[3]

Finally, Plaintiff does not contest the remainder of Defendant's arguments concerning Assault and Battery on Police Officer (21 O.S. §§649-650) and regarding Resisting a Police Officer (21 O.S. §268). Hence, Plaintiff's False Arrest/Detention claim fails as a matter of law.

**B.    The Excessive Force Claim is Without Merit.**

**(a) Severity of Crime.** As noted previously, Lee had been directed to serve a protective order on Martinez for the purpose of ensuring the two children were safe, following allegations that he had caused physical harm to Sara Chapa and threated a violent act against her. (Dkt. #50-2 at 3). Martinez had previously raped Chapa. (Dkt. #50-2 at 2). Plaintiff claims that the crimes of making violent threats; obstructing an officer; and violation of a protective order were not "severe" for purposes of an excessive force analysis because they were misdemeanors. (Dkt. #58 at p. 16). But, this is not an accurate analysis. In *Corondo v. Olsen*, 2022 WL 152124 (10th Cir.

---

[3] Plaintiff argues that "personal service" of the protective order *was* required, but also believes that personal service was *not* required, and that the protective order could have been just dropped off at the house. Either method was effective service. *E.g.*, 12 O.S. §2004(C)(1)(c)(1).

5

2022) (unpublished), the suspect was accused of making threats against persons and property but was only charged with *misdemeanors*; the Court held that this fact was irrelevant because the officers were otherwise responding to a "volatile situation" and the Court was required to review the circumstances facing the officer at the precise moment the officer used force, and not from a hindsight perspective. Here, at the initial arrest stage, Lee only used the amount of force necessary to arrest and subdue Martinez, which was *ineffective*. Thereafter, Martinez admittedly resisted arrest and attempted to escape Lee. And, Plaintiff provides no analysis of Martinez's conduct after Lee's initial attempt to arrest Martinez. His violent resistance to arrest created a highly volatile situation. The severity of the crimes at issue should be considered high.

Plaintiff claims that Martinez had a "right" to resist an "illegal arrest" and that Lee should not have used *any* physical force to subdue Martinez. As shown above, probable cause existed to arrest Martinez for numerous crimes and therefore Martinez had no "right" to resist arrest. Further, the physical force that Lee used was clearly reasonable since even *that* amount of force was unsuccessful in subduing Martinez, as Lee was unable to bring him under control. In fact, one of Plaintiff's primary arguments in this case is that Lee should have used less-than-lethal force options. But now, in whipsaw fashion, Plaintiff argues that even less-than-lethal force was inappropriate. Here, it is undisputed that the Lee and Martinez had fallen on the floor and were fighting each other all the way into the back room. And, immediately prior to the shooting, Martinez had escaped Lee's grasp. Plaintiff's argument that Martinez was "not resisting at all" and was "simply on the ground on his back in the corner of the southwest bedroom" at the time of the shooting is **utter fiction**. Undisputed Fact Nos. 31-36. Martinez's active resistance to a lawful arrest created a volatile situation not unlike that in *Coronado*, *supra*

**(b) Threat Level to Officer and Others.** Plaintiff's argument on this prong – that there was no threat to Lee or anyone as a result of Martinez's active resistance – blatantly ignores the undisputed facts. Indeed, Isidra Mitchell *knew* Martinez would wake up angry and cussing, and

6

that is exactly what happened. Martinez was cursing and acting wild. (Dkt. #50-3 at 35:5-12; Dkt. #50-75:5-11). He jumped out of bed and shouted out, what the F are you doing in my house, also pointing at his face, what the F are you doing in my house, get out of my house. (Dkt. #50-5 at 57:4-10). He was jumping up and down. (Dkt. #50-3 at 35:5-12). He was acting crazy. (Dkt. #50-11 at 20-21). He was cussing at the officer, calling him "bitch" and saying "Get the F out of my house," and jerking his hand forwards and backwards. (Dkt. #50-11 at 20:15-24). Martinez refused to accept service of the protective order. (Dkt. #50-5 at 79:2-3). He was possibly coming off a drug high. Plaintiff concedes he resisted arrest, despite *repeatedly* being warned that he was under arrest. He pulled away from Lee, and engaged in a fight and struggle on the floor, which moved into the back bedroom. Lee reasonably believed Martinez was reaching for a weapon. Martinez had a single loose handcuff, which Plaintiffs' expert conceded could be used as a weapon. The struggle caused Lee to nearly black out and urinate on himself. The actual threat level was high.[4]

Plaintiff does not address the conduct of Isidra Mitchell and Maria Mitchell who colluded with Martinez to prevent Lee from summoning back-up help. Mitchell was attempting to interfere with the arrest by tapping on Lee's shoulder or being "on top of" Lee. She also intentionally refused to provide Martinez with his radio when Lee requested it. Maria Martinez also prevented Lee from accessing his radio. This was egregious (if not criminal) conduct of Martinez's family members during the midst of an intense struggle between Lee and Martinez. It

---

[4] Plaintiff attempts to dispute the facts related to the threat level by submitting two new affidavits. (Dkt. ##58-2, 58-6). The Court will note that each affidavit attempts to minimize Martinez's aggressive conduct by suggesting that none of it should be perceived as being given in a "threatening manner." The Court should disregard these new affidavits to the extent they conflict with the actual testimony. *See Franks, supra*. Martinez's expletive-filled tirade and aggressive jumping around and hand movements could clearly be perceived as threatening conduct. In deposition, Maria Martinez specifically agreed that he was jumping, cursing, and getting wild. (Dkt. #50-3 at 35:5-12). Notably, the new affidavits *do* concede that Martinez was resisting arrest (but use the phrase "maneuvered away" from Lee). (*Id.*). They also do not contest the fact Isidra Mitchell colluded with Martinez to prevent Lee from summoning help.

increased the threat level by further isolating Lee in the small confines of this part of the house.[5]

Plaintiff claims that Lee used excessive force because he deliberately and recklessly created the need to use such force. Defendant has already noted that this legal theory conflicts with *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017). But, even assuming the *Allen* rule applies, the undisputed facts show that Lee did not *deliberately or recklessly* create the need to use force. Plaintiff claims that Lee "unlawfully entered the residence" but, as shown above, this is false. Undisputed Fact 12. Second, Plaintiff contends that Lee failed to have a back-up officer present, but this does not establish that Lee "deliberately" created the need for the use of force. To the contrary, back-up officers are rarely needed when officers serve civil process. (Dkt. #50-20, ¶16). Third, Plaintiff claims there was no "exigent need" to serve the protective order, but the Judge Pazzo had *directed* Lee to serve the protective order; no-one outside the residence was aware of the condition of the children at the time.[6] These facts do not establish that Lee *deliberately created* the need to use force. Finally, Plaintiff claims that Lee was the one who initially acted aggressively, but the undisputed facts cited above show exactly the opposite. Martinez behaved *exactly as Mitchell predicted*: angry, agitated, and upset. He was acting crazy, jumping up and down, using motions with his hands, cursing Lee and call him "bitch," and telling him get the F out of the house. He immediately made it clear he would not comply with the protective order by resisting and uttering curse words and threats against Lee. And he then further resisted arrest; pulled away from Lee; and engaged in an intense struggle. It is undisputed that Martinez had escaped Lee's grasp in the back bedroom, was standing up, and continued to engage in a struggle or fight with Lee. Undisputed Facts 31-36. It was at that time that Lee reasonably perceived a threat of imminent harm and used deadly force.

---

[5] Plaintiff also does not separately address the factors in *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008), all of which favor Deputy Lee on the threat level.

[6] Lee was in a catch-22: if he had *not* served the protective order and harm had befallen the children, Lee would be facing a whole different type of criticism.

**(c)   Resisting Arrest.**  Plaintiff does not contest the fact that Lee was resisting arrest. Plaintiff argues that he was "reasonably resisting an unlawful arrest," but as discussed above, this is inaccurate.  Hence, this factor also supports Lee's position on the use of force.

Defendant contends that consideration of all the relevant factors supports a finding that the use of force by Lee was reasonable and not in violation of the Fourth Amendment.

**C.     The Law Was Not Clearly Established.**  Plaintiff first argues that Defendant "waived" his right to assert qualified immunity (1) related to the false arrest/detention claim and (2) regarding the use of force prior to the use of deadly force.  This is not true, as Lee properly invoked his right to qualified immunity.  At that point, Plaintiff was required to satisfy a "well-settled twofold burden," including a showing that the alleged constitutional violation was grounded in "then-extant clearly established law."  *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015); *Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016).  Plaintiff has failed to do so with respect to the false arrest/detention claim and regarding the force used during the attempt to arrest Martinez.  (Dkt. #58 at p. 22) (citing <u>no</u> case law).  That is, Plaintiff has failed to cite any cases clearly showing that Lee was prohibited from arresting Martinez under these circumstances or that the initial use of force was improper.  Hence, Lee is entitled to qualified immunity on these claims and allegations.  *See Gutierrez,* 841 F.3d at 903.

Regarding the use of deadly force, Plaintiff cites <u>zero Tenth Circuit cases to support his excessive force claim</u>.  Plaintiff cites one decision from the District Court of Oklahoma and several from outlying jurisdictions.  They are not on point:

- *Davis v. City of Tulsa*, 380 F.Supp.3d 1163 (N.D. Okla. 2019):  In this case, an officer allegedly shot the unarmed suspect in the back while he was kneeling on the floor with his hands in the air.  Martinez was not shot in the back, was not kneeing on the floor, and did not have his hands in the air, but was violently resisting arrest, had a weapon (the loose handcuff) and had escaped Lee's grasp and was standing in front of him.

- *Gambrel v. Knox Cnty*, 25 F.4th 391, 397 (6th Cir. 2022):  This case was issued two years after the incident and is therefore not relevant to the clearly-established prong.  Further, in that case, the suspect was allegedly *not* resisting at the time of the use of the force.

9

Here, Plaintiff does not dispute that Martinez was resisting arrest. *Gambrel* also did not involve colluding family members in the tight confines of a house, as here.

- *Adams v. Sheriff of Palm Beach County*, 658 Fed. Appx. 557 (11th Cir. 2016): In that case, the suspect was allegedly shot when he was standing at the back of a truck at a time when the officer had no reason to believe he was armed or otherwise posed a danger. The opposite is true here as Martinez immediately resisted arrest and engaged in a fight and struggle with Lee in the small confines of the house. The *Adams* court also noted that a forensic analysis contradicted the officer's version of events. The opposite is true here: the forensic analysis confirmed Lee's version of events at the time of the shooting.

- *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005): This case did *not* involve a shooting, but involved the use of pepper spray, physical force, dragging of a suspect off the porch face-down, and ordering a canine to attack him 3 times. It is not comparable to any aspect of this case, primarily because of Martinez's ongoing resistance to arrest.

- *Banks v. Hawkins*, 999 F.3d 521 (8th Cir. 2021): The officer in this case shot the plaintiff after he opened his door, at a time when he posed no danger. The present case is different because Martinez was actively resisting and posed a real danger to Lee, after he escaped Lee's grasp. *Banks* did not involve colluding family members.

- *Allen.* Plaintiff claims that *Allen* is well-established and that Lee was clearly aware that his "reckless and deliberate conduct" made the subsequent shooting of Martinez unreasonable. *Allen* is far from clearly-established, as it has been substantially limited over the years. *Estate of Valverde v. Dodge*, 967 F.3d 1049, 1067 (10th Cir. 2020) (limiting "reckless conduct" to a "police onslaught at the victim."). Further, Lee's conduct was not reckless, as he had been *directed* to serve the protective order; had been *allowed* to enter the house; and was required to *respond* to Martinez's aggressive conduct whereby he unequivocally showed that he would not comply with the protective order.

Because Plaintiff has failed to identify any clearly-established law regarding the use of deadly force, and because extant 10th Circuit case law actually supports the use of force in this case, (Dkt. #50 at 24) (citing cases), Defendant Lee is entitled to qualified immunity.

### C. The Substantive Due Process Claim and State Law Claims are Without Merit

Finally, Plaintiff does not provide any substantial defense to the substantive due process and state law claims. Summary judgment is appropriate for the reasons previously identified.

WHEREFORE, premises considered, Defendant Cheyenne Lee respectfully requests the Court find that he is entitled to qualified immunity and grant his Motion for Summary Judgment.

Respectfully submitted,

**BEST & SHARP**


*s/ Thomas A. LeBlanc*
Thomas A. LeBlanc, OBA #14768
tleblanc@bestsharp.com
Emily K. Wilson, OBA #33091
ewilson@bestsharp.com
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
*Attorney for Defendants,*
*Cheyenne Lee and The Board of*
*County Commissioners of Rogers County*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Ken Ray Underwood, OBA #9156
Law Offices of Ken Ray Underwood
The Beacons Building
406 S. Boulder Avenue, Suite 640
Tulsa, OK 74103
Phone: (918) 582-7447
Fax: (918) 582-0166
Email: ken@ulawok.com
*Attorney for Plaintiff*

Dale K. Galipo, SBN 144074
Law Offices of Dale K. Galipo
21800 Burbank Blvd, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118
Email: dalekgalipo@yahoo.com
*Attorney for Plaintiff*


*s/ Thomas A. LeBlanc*