# United States District Court
## for the Northern District of Oklahoma

Case No. 20-CV-598-JDR-SH

Rosalinda Ibarra, *as the special administratrix of* The Estate of Jorge Martinez, *deceased*,

*Plaintiff*,

versus

Cheyenne Lee; The Board of County Commissioners of Rogers County,

*Defendants*.

## OPINION AND ORDER

The Tenth Circuit Court of Appeals remanded this case following Rosalinda Ibarra's appeal of the Court's order granting Defendants' motions for summary judgment. Dkt. 83. This Court previously entered summary judgment in favor of the Defendants based on qualified immunity. Dkt. 72. On appeal, the Tenth Circuit reversed and directed the Court to reevaluate the second prong of qualified immunity to determine whether Jorge Martinez's constitutional rights were clearly established at the time of the shooting. Dkt. 83 at 27-28. The Court must also evaluate Ms. Ibarra's municipal liability and state law claims.[1] *Id.* at 28. For the following reasons, Rogers County Deputy Cheyenne Lee's motion [Dkt. 50] is DENIED and The Board of County Commissioners of Rogers County's motion [Dkt. 51] is GRANTED IN PART and DENIED IN PART.

---

[1] Ms. Ibarra abandoned her claim for municipal liability based on denial of medical care and her substantive due process claim. The claims were initially dismissed by this Court and were not argued in her appeal to the Tenth Circuit. Dkt. 83 at 3, n.1.

No. 20-cv-598

The uncontroverted record establishes that Mr. Martinez and Sarah Chapa had two children together.² On March 12, 2020, Ms. Chapa called the County to request a welfare check on the children, who were in Mr. Martinez's custody. Dkt. Nos. 50 at ¶ 1; 58 at ¶ 1. The welfare check was routed to Deputy Lee, but he was unable to locate Mr. Martinez or the children. Dkt. Nos. 50 at ¶ 2; 58 at ¶ 2.

On March 13, 2020, Ms. Chapa obtained a protective order against Mr. Martinez on behalf of herself and the children. Dkt. 50-2. Rogers County District Judge Pazzo instructed the County to serve Mr. Martinez with the protective order. Dkt. Nos. 50 at ¶ 7; 58 at ¶ 4. Deputy Lee drove to Mr. Martinez's home where he lived with his mother, Isidra Mitchell, and his sister, Maria Martinez. Dkt. Nos. 50 at ¶ 10; 58 at ¶ 7. When Deputy Lee arrived, Ms. Martinez answered the door because Mr. Martinez was sleeping. Dkt. Nos. 50 at ¶ 13; 58 at ¶ 9. The parties disagree as to the events that took place once Deputy Lee arrived at the home.

Ms. Martinez and Ms. Mitchell maintain that they did not invite Deputy Lee into the home and that Deputy Lee initiated the altercation with Mr. Martinez without stating a reason for the attempted arrest. Dkt. Nos. 58-2 at ¶¶ 8-9; 58-6 at ¶¶ 7-8. They also state that Mr. Martinez was unarmed and did not fight back against Deputy Lee. Dkt. Nos. 58-2 at ¶ 15; 58-6 at ¶ 10. In support of this claim, they point to Mr. Martinez's autopsy report, which they maintain failed to show the type of injuries that would be consistent with striking or punching someone. Dkt. 58 at 25. Ms. Mitchell's testimony states that she saw Deputy Lee on top of Mr. Martinez at the time of the shooting. Dkt 58-6 at ¶ 12. Ms. Ibarra's medical expert also opined that the bullet that killed Mr. Martinez had a "downward" trajectory.³ Dkt. 58-10 at ¶ 8.

---

² The Court adopts the uncontroverted facts as stated by the Tenth Circuit. Dkt. 83 at 10.

³ Dr. Bennet Omalu's testimony is subject to a pending motion to exclude. Dkt. 49. The Court finds that, even without Dr. Omalu's testimony, Ms. Ibarra has provided enough

2

No. 20-cv-598

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. At this stage, the court must "view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)).

I.

Deputy Lee maintains that even if facts are as Ms. Ibarra states, her claims are barred by qualified immunity. Dkt. 50 at 18. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To avoid summary judgment on qualified immunity grounds, the plaintiff must show that (1) a reasonable jury could find facts supporting a violation of a constitutional right and (2) the right was clearly established at the time of the violation. *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1272 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). If the plaintiff fails to establish either prong, the defendant is granted qualified immunity. *See, e.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

---

evidence to raise a genuine issue as to whether Mr. Martinez was on the ground when Deputy Lee shot him.

No. 20-cv-598

Ms. Ibarra asserts that Deputy Lee violated Mr. Martinez's Fourth Amendment rights by seizing him without probable cause and using excessive force by shooting him. Dkt. 58 at19-28. The Tenth Circuit, upon review of the record, concluded that there were genuine issues of material fact for a jury to resolve concerning whether Deputy Lee had probable cause to arrest Mr. Martinez and whether he used excessive force in shooting Mr. Martinez. Dkt. 83 at 19, 22. Accordingly, the only issue for this Court to determine regarding qualified immunity is whether Mr. Martinez's right to be free from Deputy Lee's alleged use of excessive force and attempted arrest without probable cause was clearly established at the time of the altercation.

A right is clearly established where "there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)). This prong does not "'require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The heart of the issue is whether the official was "on notice that the conduct in question could violate the plaintiff's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001).

The Court finds that *Tennessee v. Garner*, 471 U.S. 1 (1985), put Deputy Lee on notice that his use of excessive force was unconstitutional. *Garner* formally recognized what most would consider common sense—that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." 471 U.S. at 11; *see also King v. Glanz*, No. 12-CV-137-JED-TLW, 2014 WL 2805313, at *8 (N.D. Okla. June 20, 2014) (holding that in 2010 "the law was clearly established that a law enforcement officer may not use deadly force to seize an unarmed person who is not posing any threat to the officer or others"). If true, the facts presented by Ms. Ibarra establish that Deputy

4

Lee shot an unarmed individual who was not resisting arrest, despite being on notice that such conduct was unconstitutional. Thus, Deputy Lee is not entitled to qualified immunity from Ms. Ibarra's excessive force claim.

Turning to the unlawful arrest claim, the Tenth Circuit held that a reasonable jury presented with Ms. Ibarra's evidence could find that Deputy Lee did not have probable cause to arrest Mr. Martinez. Dkt. 83 at 19-22. "It has long been established that an arrest…without probable cause that a crime has been committed violates the Fourth Amendment." *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007)). The Court finds that the constitutional right to be free from an arrest without probable cause was clearly established at the time of the shooting. *See, e.g., Cortez*, 478 F.3d at 1117 ("The law was and is unambiguous: a government official must have probable cause to arrest an individual.") (collecting cases). Accordingly, Deputy Lee was on notice that attempting to arrest Mr. Martinez without probable cause was unconstitutional. Deputy Lee is not entitled to qualified immunity and his motion for summary judgment on the excessive force and unlawful arrest claims is DENIED.

## II.

Because a reasonable jury could find that Deputy Lee's actions were unconstitutional, the Court must analyze Ms. Ibarra's municipal liability claims against the County. Dkt. 83 at 28. A municipality cannot "be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Instead, to establish municipal liability a plaintiff must show not only that the municipal employee committed a constitutional violation but also that a municipal policy or custom was the moving force behind the constitutional deprivations. *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipal policy or custom can include:

>(1) a formal regulation or policy statement;
>
>(2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
>
>(3) the decisions of employees with final policymaking authority;
>
>(4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or
>
>(5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Ms. Ibarra has presented enough evidence upon which a reasonable jury could find that Deputy Lee violated Mr. Martinez's constitutional rights. Dkt. 83 at 28. She alleges several different theories as to why that violation was caused by the County's policies or customs: that the County failed to properly train Deputy Lee; it had a custom of allowing officers to use excessive force; and it had a history of ratifying officers' use of excessive force. Dkt. 2 at ¶¶ 59-82.

### A.

The Court first addresses Ms. Ibarra's inadequate training claim. There are two areas in which Ms. Ibarra alleges that the County failed to properly train Deputy Lee. First, she asserts that the County failed to train

Deputy Lee to serve protective orders with a second officer present. Dkt. 2 at ¶ 61. Second, Ms. Ibarra claims that the County failed to provide Deputy Lee with the annual training on use of lethal force and that Deputy Lee's lack of training was directly connected to the shooting death of Mr. Martinez. Dkt. 57 at 14-15.

The Court recognizes that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). This is because "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Generally, a failure to train claim requires a showing that there is "a pattern of unconstitutional behavior" and the municipality "consciously or deliberately [chose] to disregard the risk of harm." *Barney v. Pusipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998) (internal quotation marks and citations omitted).

Ms. Ibarra argues that she has shown the necessary pattern of similar constitutional violations to establish sufficient notice which would amount to deliberate indifference by the County in allowing only one officer to serve a protective order. Dkt. 2 at ¶ 29. She points to an instance in June of 2018 when Rogers County Sheriff Scott Walton "slammed" an arrestee's head into a wall. Dkt. 57 at 11-12. The second incident she cites was in March of 2019 when Deputy Lee arrested an individual after a car chase and allegedly beat him with a flashlight. *Id.* at 10. The third event was in April of 2019 when a deputy was shot by another deputy while pursuing an arrest. *Id.* at 11. And finally, she points to the August 2020 shooting death of Paul Bryan following a car chase. *Id.* at 10.

But the Court is not persuaded that these prior incidents are sufficiently similar to make the required deliberate indifference showing. None of

the events cited involve service of a protective order as to put the County on notice that it should require two officers to be present. The facts do not suggest that the County was deliberately indifferent to a potential harm in allowing one officer to serve a protective order. Further, there is no indication that a second officer would have resulted in a different outcome for Mr. Martinez.

As to the failure to provide use of force training, Ms. Ibarra has pointed to several instances where officers used force. But Ms. Ibarra makes no claim as to whether the officers involved in these altercations lacked the annual training. She would need to show a pattern of excessive force as to put the County on notice that their training in use of force was deficient or that other officers in these situations were lacking the required training. Also, the one other instance where lethal force was used, Mr. Bryan's death, occurred nearly five months after Mr. Martinez's death. Considering the timeline, Mr. Bryan's death could not have put the County on notice of any deficiencies in its training at the time of Mr. Martinez's death. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286 (10th Cir. 2019) ("Incidents that occurred subsequent to the incident at issue in this case cannot have provided Denver with notice of a deficiency in its training program before that incident….")

When, as here, there is no pattern of sufficiently similar unconstitutional behavior, a failure to train claim may be premised on a single incident based on a showing of: (1) the existence of a municipal policy or custom involving deficient training; (2) an injury caused by the policy that is obvious and closely related; and (3) that the municipality adopted the policy or custom with deliberate indifference to the potential injury. *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021) (citing *Waller*, 932 F.3d at 1283-34). The Court must apply this analysis here to evaluate whether Mr. Martinez's death was obvious and closely related to the alleged policies and whether the County demonstrated deliberate indifference.

As to the first element, Ms. Ibarra alleges that the County's policy of serving a protective order with one officer is unconstitutional. The second

element requires Ms. Ibarra to show that the alleged inadequate training was a direct causal link to Mr. Martinez's death. "[I]n order for liability to attach in a failure to train case, the identified deficiency in a city's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation." *Brown v. Gray*, 227 F.3d 1278, 1290 (10th Cir. 2000) (internal quotation marks and citations omitted). When analyzing the training, there is a noted difference between officers who "were trained to do precisely the wrong thing" and officers who were "not given enough training to know the correct response to a dangerous situation." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 844 (10th Cir. 1997). The former demonstrates a causal link between the training and injury, but the latter does not. *Id.* And the latter is precisely what we have here.

Deputy Lee received training on how to serve protective orders and was following that training when he attempted to serve Mr. Martinez. Dkt. Nos. 51 at ¶ 12; Dkt. 57 at ¶ 12. Thus, this is not a situation where Deputy Lee was improperly trained on how to serve a protective order, but instead, Ms. Ibarra argues, he should have had additional training on how to handle an individual that was potentially armed or on drugs. Dkt. 57 at ¶ 12. There is no indication that Deputy Lee was trained "to do precisely the wrong thing." *Allen*, 119 F.3d at 844. And again, there is no indication that the presence of a second officer in this situation would have prevented Mr. Martinez's death.

As for Ms. Ibarra's claim that Deputy Lee was inadequately trained regarding the use of lethal force, it is uncontested that Deputy Lee received "the minimum requirements for employment as a law enforcement officer in Oklahoma." Dkt. 57 at ¶ 1. The record is devoid of any indication that the County incorrectly trained Deputy Lee in use of force or that it was on notice that Deputy Lee's alleged lack of training would result in constitutional violations. There is also no indication that additional training would have prevented Mr. Martinez's death. *Connick*, 563 U.S. at 68 (To establish municipal liability, a party cannot merely show "that additional training would have

been helpful in making difficult decisions."). Accordingly, the County's motion for summary judgment as to Ms. Ibarra's inadequate training claim is GRANTED.

### B.

Second, Ms. Ibarra alleges that the County "established customs, practices and patterns authorizing and even encouraging use of excessive force during encounters with citizens…." Dkt. 2 at ¶ 69. Specifically, she argues that the County authorized use of excessive force by failing to require its officers to carry non-lethal tools—namely batons, pepper spray, and tasers. Dkt. 57 at 20-21. But federal courts have routinely rejected "the less-lethal weapons theory of municipal liability." *Davis v. City of Tulsa, Okla.*, 380 F. Supp. 3d 1163, 1175 (N.D. Okla. 2019) (collecting cases). This is because a police officer's actions are evaluated for reasonableness rather than whether he used the least intrusive means. *Id.* at 1176. And in this case, there is no indication that the County's failure to require its officers to carry batons, pepper spray, or tasers was deliberately indifferent to the constitutional rights of others. Ms. Ibarra has failed to provide any evidence that the County was on notice or that Mr. Martinez would not have been shot if Deputy Lee were required to carry a taser, baton, or pepper spray. The County's motion for summary judgment regarding Ms. Ibarra's established customs claim is GRANTED.

### C.

And finally, Ms. Ibarra alleges that the County has a history of ratifying officers' use of excessive force and ratified Deputy Lee's actions in this case. Dkt. 2 at 21. Ms. Ibarra claims that the County approved of Deputy Lee's actions as they relate to Mr. Martinez's death by failing to discipline, reprimand, retrain, or suspend him. *Id.* Under a ratification theory, "a municipality will not be found liable…unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these

actions." *Bryson*, 627 F.3d at 790. It is well established that a municipal liability claim relies on the County's notice that the acts were unconstitutional. Thus, approval after the fact cannot support a ratification theory.[4]

Ms. Ibarra also relies on the same examples of excessive force discussed previously to support her ratification claim. But as the Court found, none of these occurrences are sufficiently similar to the deadly shooting at issue here. Further, there is no indication that the County had "a policy [regarding use of excessive force] that was the moving force behind" Mr. Martinez's death. *Davis*, 380 F. Supp. 3d at 1174. The County's motion for summary judgment as to the ratification claim is GRANTED.

### III.

Moving to the claims brought under Oklahoma law, Ms. Ibarra alleges claims for false arrest [Dkt. 2 at ¶¶ 83-87], battery [*Id.* at ¶¶ 88-93], and negligence [*Id.* at ¶¶ 94-99], all of which Deputy Lee claims are barred by the Oklahoma Governmental Tort Claims Act. Dkt. 50 at 33 (quoting *Morales v. City of Okla. City*, 230 P.3d 869 (2010); Okla. Stat. tit. §§ 153(A), (C)). The Act "provides for exclusive liability of a political subdivision for the torts of its officers or employees acting within the scope of their office or employment." *Hodge v. Keene*, No. CIV-10-1283-D, 2013 WL 372460, at *8 (W.D. Okla. Jan. 30, 2013) (citing Okla. Stat. tit. 51, § 153). If the employee was acting within the scope of employment, the action for his or her conduct must be brought against the state or political subdivision. Okla. Stat. tit. 51, § 153(C). The question at issue here is whether Deputy Lee was in fact acting

---

[4] *See, e.g., Lynch v. Bd. of Cty. Comm'rs of Muskogee Cty., Okla.*, 786 F. App'x 774, 787 (10th Cir. 2019) ("Failing to adequately investigate or punish does not count as ratification."); *see also Davis*, 380 F. Supp. 3d at 1174 ("The City's post-shooting review could not have been the direct cause of…the shooting that occurred *before* the review."); *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("As for any failure to discipline Officer Aragon, basic principles of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation.").

within the scope of his employment, which would require Ms. Ibarra to bring her state law claims against the County rather than Deputy Lee individually.

Although Ms. Ibarra appears to agree that Deputy Lee was acting within the scope of his employment [Dkt. 2 at 23-24], the Act allows plaintiffs to argue alternatively that the employee's actions fall outside the scope of employment. Okla. Stat. tit. 51, § 153(C). The Act defines scope of employment as "performance by an employee acting in good faith within the duties of the employee's office or employment…." *Id.* at § 152(12). Thus, "[a]n act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003).

Ms. Ibarra has alternatively claimed that Deputy Lee was acting maliciously when he attempted to arrest Mr. Martinez without probable cause and used excessive force. Dkt. 2 at 24-26. She has presented evidence that Deputy Lee entered the home without telling anyone why he was there, initiated the altercation with Mr. Martinez, attempted to arrest Mr. Martinez without probable cause, and shot Mr. Martinez while he was unarmed and posed no physical threat. If the facts are as Ms. Ibarra alleges, a reasonable jury could conclude that Deputy Lee's action were not in good faith, falling outside the scope of his employment. *See, e.g., Lynch*, 786 F. App'x at 788-89 (reversing district court's grant of immunity because "[i]t would be…reasonable to conclude that the officers did not act in good faith in the force they used"). Accordingly, Deputy Lee's motion for summary judgment regarding Ms. Ibarra's state law claims is DENIED.

As for the County, its only argument raised in its motion regarding the state law claims is that Deputy Lee's actions were reasonable. Dkt. 51 at 23. But Ms. Ibarra has established that a reasonable jury could determine otherwise. Dkt. 83 at 27. And unlike Deputy Lee, the County wholly fails to make an argument that the state law claims are barred by the Act. Dkt. Nos. 51 at 23-24; 62 at 10. It likewise fails to point to any facts that show Ms. Ibarra failed

No. 20-cv-598

to comply with the Act's requirements. *Id.* The County's motion for summary judgment regarding the state law claims is DENIED.

IT IS THEREFORE ORDERED that Deputy Lee's motion for summary judgment [Dkt. 50] is DENIED. The County's motion for summary judgment [Dkt. 51] is GRANTED IN PART and DENIED IN PART: it is granted as to Ms. Ibarra's municipal liability claims; it is denied as to Ms. Ibarra's state law claims.

DATED this 14th day of May 2024.

JOHN D. RUSSELL
*United States District Judge*