# United States District Court

## for the Northern District of Oklahoma

---

### Case No. 4:20-cv-598-JDR-SH

---

ROSALINDA IBARRA, *as the special administratrix of* THE ESTATE OF JORGE MARTINEZ, DECEASED,

*Plaintiff*,

*Versus*

CHEYENNE LEE; THE BOARD OF COUNTY COMMISSIONERS FOR ROGERS COUNTY,

*Defendants*.

---

### OPINION AND ORDER

---

Plaintiff Rosalinda Ibarra, special administratrix of the estate of Jorge Martinez, intends to introduce testimony at trial of Dr. Bennet Omalu. Defendants Deputy Lee and the Board of County Commissioners for Rogers County have moved to exclude Dr. Omalu's testimony for a lack of qualifications and an unreliable methodology. Dkt. 49.[1] Alternatively, Defendants request the Court limit the scope of Dr. Omalu's testimony. *Id.* Ms. Ibarra opposes the motion. Dkt. 54. For the reasons discussed below, Defendants' motion is granted as to Dr. Omalu's research into chronic traumatic encephalopathy ("CTE") and his media depictions and denied as to all other requested relief.

Defendants object to Dr. Omalu's qualifications and the basis and reliability of his testimony as reasons for his exclusion. Alternatively, they object

---

[1] All citations use CM/ECF pagination.

No. 20-cv-598

to specific parts of Dr. Omalu's testimony, namely (a) the improper disclosure of Dr. Omalu's analysis of the bullet's path after exiting Mr. Martinez's body, (b) Dr. Omalu's testimony about Deputy Lee's physical condition, (c) Dr. Omalu's testimony about Mr. Martinez's pain and suffering, (d) Dr. Omalu's use of the words "victim" and "assailant" in his report, and (e) any mention of Dr. Omalu's fame or media portrayals of him based on his research into CTE. Dkt. 49.

I

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the *Daubert v. Merrell Dow Pharm., Inc.* standard, the Court must act as a gatekeeper to ensure that a proffered expert witness is both qualified and that the expert's testimony is reliable. 509 U.S. 579, 589 (1993). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-cv-475-GKF-FHM, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert*, 509 U.S. at 589). Initially, the Court must determine "whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). If the expert is qualified, the Court then shifts its focus to "whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and

No. 20-cv-598

relevant, in that it will assist the trier of fact." *Id.* at 1278. Defendants challenge both Dr. Omalu's qualifications and reliability.

A

Any expert's opinion must be "within the reasonable confines of [the expert's] subject area[,]" but "a lack of specialization does not affect the admissibility of [the expert's] opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)).

Defendants argue that Dr. Omalu is not qualified to testify to "body positioning," "external bullet trajectories," and "external ballistics." Dkt. 49 at 13. They argue "ballistics and bullet-trajectories are highly technical areas of bullet path reconstruction" and cite to cases involving experts in firearms and police procedure who were found not to possess the knowledge necessary to opine on these issues. Dkt. 49 at 15.

Defendants' arguments are unavailing. Dr. Omalu has conducted thousands of autopsies, many involving gunshot wounds. Dkt. 49-1 at 2; Dkt. 54 at 9. This requires knowledge of ballistics and gunshot evidence, subjects on which other courts have permitted Dr. Omalu and other forensic pathologists to opine. *Barillas v. City of Los Angeles*, No. CV 18-08740-CJC (ASX), 2021 WL 4434977, at *13 (C.D. Cal. Apr. 12, 2021) (finding that Dr. Omalu's medical expertise and "thousands of autopsies involving gunshot wounds" qualifies him to opine on "ballistics, scene reconstruction, [and] firearms."); *see also Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2019 WL 4686605, at *2-4 (D. Colo. Sept. 26, 2019) (permitting a forensic pathologist to testify to bullet trajectory and body positioning); *Fancher v. Barrientos*, No. CIV. 11-118 LH/LAM, 2014 WL 2574530, at *2-3 (D.N.M. Jan. 9, 2014) (same). As body positioning and ballistics of a bullet entering and exiting a human body are well within the "reasonable confines" of expertise on the

No. 20-cv-598

forensic pathology of gunshot wounds, the Court holds that Dr. Omalu is qualified to opine on these subjects. *Ralston*, 275 F.3d at 970.

### B

The trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152. The focus should be on the methodology used in reaching conclusions, rather than the conclusions themselves. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005). This Court should generally consider the following four factors when determining reliability:

(1) whether the theory has been or can be tested or falsified;

(2) whether the theory or technique has been subject to peer review and publication;

(3) whether there are known or potential rates of error regarding specific techniques; and

(4) whether the theory or approach has "general acceptance."

*Id.* at 1233 (quoting *Daubert*, 509 U.S. at 593-94). Further, whether another court has accepted a methodology is relevant in determining if expert testimony is reliable. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1222 (10th Cir. 2016).

Defendants challenge Dr. Omalu's methodology and raise four arguments. First, they argue Dr. Omalu "did not view the scene and made *zero* measurements to support any bullet trajectory calculations (other than internal trajectory calculations)." Dkt. 49 at 15. Although Dr. Omalu did not view the scene directly, he analyzed numerous documents, including the Crime Scene Investigation Report, the Autopsy Report and accompanying pictures, multiple sets of deposition transcripts, and exhibits. Dkt. 49-1 at 3. The autopsy report by Dr. Joshua Lanter includes measurements of the bullet's entrance, pathway, and exit from Mr. Martinez's body. *Id.* at 4. This qualifies as

No. 20-cv-598

sufficient data analyzed for the purposes of admitting Dr. Omalu as an expert. *See Coones v. Unified Gov't of Wyandotte Cnty/Kansas City*, No. 22-2447-JAR, 2024 WL 4792011, at *7 (D. Kan. Nov. 14, 2024) (admitting forensic pathologist who did not perform autopsy but reviewed reports).

Defendants next argue that Dr. Omalu's testimony is unreliable because he refused to provide a diagram of the positions of Mr. Martinez and Deputy Lee when requested during his deposition. Dkt. 49 at 17; Dkt. 49-2 at 30-31; Dkt. 65 at 3. There is no requirement that an expert diagram on-the-spot to show he used reliable methods when reaching an opinion, and Defendants do not point to any case law indicating otherwise. The detail present in Dr. Omalu's report and deposition is sufficient for purposes of admission as an expert witness. He discusses how the shot's angle precludes certain body positions and suggests others to be more likely, indicating his methodology for determining the relative positions of Mr. Martinez and Deputy Lee. *See* Dkt. 49-1 at 6-8; Dkt. 49-2 at 20-24. Further disputes about Dr. Omalu's understanding of the scene are best left for cross-examination.

Defendants then argue that Dr. Omalu's testimony is inadmissible *ipse dixit* rather than reasoned analysis. Dkt. 49 at 12; Dkt. 65 at 4. The "analytical gap" between evidence and conclusion guides this Court in determining whether an expert is engaged in reasoned analysis or is simply giving *ipse dixit* opinions. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The record shows reasoned analysis. Dr. Omalu considered the size and shape of the "gunshot wound of entrance" as well as the presence of "powder stippling" around the wound to determine the angle of the shot and the gun's distance from Mr. Martinez. Dkt. 49-1 at 6-7. These specific pieces of evidence are paired with logical justifications for his conclusions. *Id.* Although Dr. Omalu's justification for his opinion on body positioning is less clear, he explained the basis for his opinion in his deposition. *See id.* at 7 (noting that if "Mr. Martinez was standing up attacking the officer as the officer

No. 20-cv-598

has proposed, and that he was kneeling at the lower level and shot the victim . . . [that] would give you an upward trajectory"). This explanation eliminates any analytical gap and demonstrates his reasoned analysis.

In their final challenge, Defendants argue that Dr. Omalu impermissibly testifies to witness credibility when he states that Deputy Lee's testimony is "less likely, improbable, implausible, and unreasonable" and that Mr. Martinez's mother's testimony is "consistent" with his analysis. Dkt. 49 at 19; Dkt. 49-1 at 7. Defendants contend that Dr. Omalu's opinion merely "vouch[es] for the credibility of witness testimony." Dkt. 49 at 20. To support their argument, Defendants cite to *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001), a case where an expert witness was barred from testifying about the probability of another witness lying to the police.

Unlike the report at issue in *Adams*, Dr. Omalu does not analyze the truthfulness of any witness's testimony directly. Rather, he notes that there are two diverging witness accounts. Dkt. 49-1 at 3. Dr. Omalu compares his findings to the two "forensic scenario[s]" aligning with each witness's testimony and provides an opinion on which scenario is more in line with the results of his report. Dkt. 49-1 at 7.[2] A specific "vouching" statement like "Ms. Martinez mother's account is more likely" would be an impermissible statement, but a statement that the physical evidence aligns with a witness's testimony does not intrude into the province of the jury. *Adams*, 271 F.3d at 1245-46.

Dr. Omalu has sufficient expertise to testify to both the bullet's external trajectory and the body positions of Mr. Martinez and Deputy Lee at the time Mr. Martinez was shot. The Court is satisfied that he has reviewed

---

[2] At his deposition, Dr. Omalu clarified that he does not "make an assessment or a determination as to . . . which witness should be believed" and "my duty is to perform a scientific analysis and opine on which scenario is not consistent with the science." Dkt. 54-1 at 5.

No. 20-cv-598

sufficient data and that his methods are reliable. The Court, therefore, will not exclude him as an expert witness. Further disputes over his methods, data, and expertise are best left for cross-examination.

## II

Defendants also object to specific opinions from Dr. Omalu. First, Defendants argue that Dr. Omalu's opinion on the bullet ricocheting after it exited Mr. Martinez's body was improperly disclosed. Second, they argue that Dr. Omalu should not be allowed to testify to Deputy Lee's condition after the incident. Third, they object to any testimony from Dr. Omalu about Deputy Lee's pain and suffering. Fourth, they object to Dr. Omalu's use of "victim" and "assailant" in his testimony and report. Last, Defendants object to any mention of Dr. Omalu's research into CTE or his portrayal in film.

## A

Defendants argue that Dr. Omalu's deposition statements regarding the trajectory of the bullet after it exited Mr. Martinez's body—namely, that it ricocheted off the carpeted floor beneath Mr. Martinez and impacted the wall—were not sufficiently disclosed and are inadmissible pursuant to Rules 26(a)(2) and 37(c)(1) of the Federal Rules of Civil Procedure. Dkt. 49 at 21. Ms. Ibarra did not respond to this argument.

There are four factors relevant to whether a failure to disclose amounts to a Rule 26(a)(2) violation:

(1) the prejudice or surprise in fact of the party . . . ,

(2) the ability of that party to cure the prejudice,

(3) the extent to which [the Rule violation] would disrupt the orderly and efficient trial of the case . . . , and

(4) bad faith or willfulness in failing to comply with the [Rule].

*Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1177-78 (10th Cir. 2001) (alterations and omissions in original) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980)).

No. 20-cv-598

In *Moss v. Feldmeyer*, the Tenth Circuit affirmed the district court's decision to permit an expert to expand his testimony from cardiology to the broader category of pathology five days before trial. 979 F.2d 1454, 1459 (10th Cir. 1992). The moving party had had the opportunity to depose the offered expert prior to trial and could not be "prejudiced or surprised" by his testimony. *Id.* Further, the court determined that "eight days" was sufficient to prepare for cross-examination, which meant that the moving party's "ability to cure was not significantly impaired." *Id.* The court likewise noted that although disruption is likely when new testimony is "first revealed in the midst of the trial . . . [n]o disruption of the trial [is] threatened" by late pretrial disclosures. *Id.* Lastly, the court determined that there was no issue of bad faith when attorneys "can inquire satisfactorily as to the sufficiency of testimony so they are not surprised." *Id.* at 1460.

Like the challenger in *Moss*, Defendants fail on all four *Smith* factors. First, the Defendants learned about the opinion during Dr. Omalu's deposition and had an opportunity to question Dr. Omalu about his methods and findings regarding the bullet's trajectory, which they did at length. Dkt. 49-2 at 19-28. They are not prejudiced based on a lack of opportunity to follow up on a theory that they thoroughly explored in Dr. Omalu's deposition. Second, Defendants have been aware of Dr. Omalu's opinion for over three years and have had sufficient time to prepare for cross-examination. Third, the opinion has been raised before trial, meaning there is no real chance of disruption. Fourth, Defendants do not point to any evidence of bad faith. Being "aware of the bullet found in the wall" is not indicative of bad faith, and a lack of supplementation does not prevent the Defendants from "inquir[ing] satisfactorily as to the sufficiency of testimony so they are not surprised." Dkt. 49 at 24; *Moss*, 979 F.2d at 1460. Dr. Omalu will be permitted to testify to his views on the trajectory of the bullet after it left Mr. Martinez's body.

8

No. 20-cv-598

## B

Defendants argue that Dr. Omalu should not be allowed to testify to Deputy Lee's physical condition after the altercation, because any injuries suffered by Deputy Lee are within the understanding of the average juror. Dkt. 49 at 25.

But Defendants' own expert witness, Dr. Judy Melinek, opined on Deputy Lee's physical condition. Dkt. 54 at 14; Dkt. 54-2 at 6, 11. In particular, Dr. Melinek suggested he may have suffered a concussion. *Id.* She also discussed "injuries to his hand, neck, wrists and face." Dkt. 54-2 at 6. Dr. Omalu may need to give testimony in response to Dr. Melinek's analysis based on photographic evidence and medical records. Dr. Omalu will thus be permitted to testify to the injuries sustained by Deputy Lee.

## C

Defendants next object that Dr. Omalu's testimony about Mr. Martinez's pain and suffering is overly vague and includes irrelevant testimony about pain for which Ms. Ibarra may not recover. As for vagueness, Defendants assert that "the jury is able to assess, on its own, any issues related to the pain and suffering experienced by [Mr.] Martinez prior to death" and object that Dr. Omalu "merely provid[ed] an estimate of the duration of [Mr. Martinez's] suffering" and that "the jury is fully capable of making the same conclusions." Dkt. 49 at 26; Dkt. 65 at 7.

Dr. Omalu writes that Mr. Martinez suffered "conscious somatic, mental and chemical pain and suffering for less than 5-10 minutes before he went into deep coma," but caveats that this range "should not be interpreted as [an] absolute quantitative estimation[] of time." Dkt. 49-1 at 13. Defendants argue that both his choice to give a range and his caveat negate any utility of his findings to the jury. This is not the case. Juries may be able to understand certain types of pain and suffering without the aid of an expert witness. But a range of time for the conscious experience of that pain is directly useful

No. 20-cv-598

to the jury in calculating damages. "That Dr. Omalu cannot testify about [Mr. Martinez's] pain and suffering with exact precision does not render his testimony inadmissible" for lack of utility to the jury. *Murillo v. City of Los Angeles*, No. CV218738FMOAGRX, 2023 WL 9420539, at *3 (C.D. Cal. Aug. 21, 2023). Dr. Omalu's use of a range goes to the weight the jury should give to his testimony, not its admissibility. *Id.* Dr. Omalu may testify to the duration of pain and suffering of Mr. Martinez.

Defendants also object to Dr. Omalu's pain and suffering testimony on the basis that Dr. Omalu discusses "chemical pain" and equates it to "unconscious pain" for which Ms. Ibarra cannot recover. Dkt. 49 at 26-27. This argument mischaracterizes Dr. Omalu's report. Dr. Omalu uses "chemical pain" to describe one of three types of "broad categories" of pain, along with "mechanical" and "thermal." Dkt. 49-1 at 8. Dr. Omalu notes that "chemical pain" is generated by "biochemical tissue reactants" produced after "mechanical tissue damage" and that "chemical bodily pain and suffering" can continue "until there is a complete cessation of all bodily functions and death[,]" including in comatose patients. *Id.* at 9, 12.

Defendants are correct that Ms. Ibarra can only recover for pain experienced by Mr. Martinez while he was alive, but Dr. Omalu's testimony will not confuse a properly instructed jury. Knowledge that chemicals which cause pain are present in the body after a loss of consciousness is unlikely to cause a jury to lose the ability to differentiate between conscious and unconscious pain and suffering for purposes of calculating damages. *See Murillo*, 2023 WL 9420539, at *2-3 (permitting Dr. Omalu to testify about chemical pain and suffering both before and after a decedent lost consciousness).

D

Defendants also object to Dr. Omalu's use of "victim" and "assailant" in his report as unduly prejudicial language. Dkt. 49 at 19-21. Neither term is, in limited use, likely to prejudice the jury. It is not disputed that Deputy Lee

No. 20-cv-598

shot Mr. Martinez, and so the use of "victim" and "assailant" is accurate insofar as it is used for identification and clarity. Dr. Omalu may use both terms for the purposes of identification. The Court will caution that overuse of these terms would rise to the level of unduly prejudicial speech and that Dr. Omalu and all others in trial should generally refer to Mr. Martinez and Deputy Lee by their names.

E

Lastly, Defendants object to testimony about Dr. Omalu's prior CTE research or his portrayal in the movie *Concussion*. Dkt. 49 at 27-28. Although Dr. Omalu's research experience into CTE is extensive, it is only relevant in this case to the question of Deputy Lee's potential concussion. Ms. Ibarra may only ask a limited set of questions as necessary to bring out Dr. Omalu's experience diagnosing concussions and may not specifically ask about Dr. Omalu's research into NFL players. Dr. Omalu's portrayal by Will Smith and his association with Hollywood are not relevant to this case and will be excluded from trial.

III

For the reasons discussed above, Defendants' motion to exclude testimony of Dr. Bennet Omalu [Dkt. 49] is granted as to Dr. Omalu's CTE research and any media depictions of him and denied as to all other relief.

DATED this 30th day of September 2025.

JOHN D. RUSSELL
*United States District Judge*