# United States District Court
## for the Northern District of Oklahoma

Case No. 4:20-cv-598-JDR-SH

ROSALINDA IBARRA, *as the special administratrix of* THE ESTATE OF JORGE MARTINEZ, DECEASED,

*Plaintiff*,

*versus*

CHEYENNE LEE; THE BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY,

*Defendants*.

### OPINION AND ORDER

Deputy Cheyenne Lee was dispatched to serve a protective order on Jorge Martinez. While serving that order, an altercation ensued, and Deputy Lee fatally shot Mr. Martinez. Rosalinda Ibarra, special administratrix of Mr. Martinez's estate, has filed suit against Defendants Deputy Lee and the Board of County Commissioners for Rogers County. Defendants have moved to exclude or limit the expert testimony of Roger Clark and Jeffrey Noble, arguing that the experts are not qualified, used unreliable methodologies, and will give cumulative testimony. Dkts. 47, 48.[1] Ms. Ibarra has contested the motions. Dkts. 56, 57. For the reasons discussed below, Defendants' motions are granted with respect to sections of both Mr. Clark's and Mr. Noble's testimony but denied as to other relief. The Court will first address Mr. Clark's testimony, then Mr. Noble's, and will last consider the objection to cumulative testimony.

---

[1] All citations use CMECF pagination.

No. 20-cv-598

## I

The Court has previously stated the relevant legal standards for admissibility of expert witness testimony in this case and applies that standard here. Dkt. 118 at 2-4.

Defendants begin with challenges to the expert testimony of Roger Clark, a police procedure expert, who will testify to the standards to which law enforcement are trained. Defendants object to Mr. Clark's use of various "foundation" principles and standards for police use of force, testimony about areas outside his expertise, and testimony about another shooting involving Deputy Lee.

### A

Defendants first argue that Mr. Clark improperly based his opinion on a set of "foundation" principles that, according to Defendants, are "erroneous standards [that] would seriously mislead . . . the jury." Dkt. 47 at 15. The objected-to principles include both general commentaries on police policies, such as the "reverence for all human life" standard in use of force training, and specific commentaries on Deputy Lee's training and actions. *Id.* at 15-16.

Most of the objected-to opinions are not offered as statements of law or statements of what Mr. Clark believes police officers should do, but rather as statements about the contents of formal police training. For example, he opines that the "standards and training regarding the use of deadly force" which police officers learn includes "reverence for all human life." Dkt. 47-2 at 7. Likewise, his statements on "deadly force," "self-discipline," "the use of a firearm," and "overreaction," all are his opinions on common elements of police training, not law. *Id.* at 7-10. Defendants also argue that when Mr. Clark opines that a failure to give a verbal warning is "contrary to law" he is giving legal testimony. Dkt. 47 at 15. But Mr. Clark's full statement is that the failure was "contrary to training, policy and law (as trained)." Dkt. 47-2 at 10.

No. 20-cv-598

When taken in context, Mr. Clark is not opining on legal precedent, but on the typical contents of police training.

Although Mr. Clark's sources are not clearly identified (which is a basis for cross-examination), other courts have permitted experts to testify regarding typical police officer training, which is relevant to whether an officer's use of force was objectively reasonable. *See V.V. v. City of Los Angeles*, No. 2:21-cv-01889-MCS-PD, 2022 WL 3598167, at *3 (C.D. Cal. July 6, 2022) (permitting Mr. Clark to testify to the "reverence for human life" standard, among others, as "opinions about how [an officer's] conduct comports with police training and typical police practice"); *see also Scott v. City of Tulsa, Oklahoma*, No. 4:17-cv-400-GAG-CDL, 2025 WL 1909382, at *3 (N.D. Okla. July 11, 2025) ("[C]ourts routinely permit experts to testify about whether a defendant's conduct was consistent with, or constituted a deviation from, standard police practices and procedures." (quotation marks omitted) (collecting cases)).

Mr. Clark's "foundation" principles are not "erroneous [legal] standards" liable to mislead the jury, but are statements of Mr. Clark's opinion, based on his knowledge and experience, about what typical police officer training includes. The Court will not exclude his testimony wholesale. However, Ms. Ibarra is cautioned that Mr. Clark must ensure that he appropriately limits his testimony to statements about the contents of police training. Defendants remain free to object to specific statements which go beyond that context.

B

Defendants object that Mr. Clark offers impermissible legal conclusions in his opinion. They argue Mr. Clark should be foreclosed from opining that Deputy Lee's conduct was "unreasonable," "reckless," or done with "callous disregard" of Mr. Martinez's life. Dkt. 47 at 22 (quoting Dkt. 47-2 at 9-11). Defendants point to several cases where Mr. Clark's testimony was

No. 20-cv-598

excluded for similar conclusions. Dkt. 64 at 4 (citing *Borawick v. City of Los Angeles*, No. CV1702036TJHJCX, 2021 WL 5770172, at *1 (C.D. Cal. July 13, 2021) (precluding Mr. Clark from stating legal conclusions as to "excessive," "unlawful," or "unreasonable force" or to any Fourth Amendment violation)).[2] Ms. Ibarra responds by arguing that Mr. Clark may give "opinion or inference even if that opinion or inference is determined by the trier of fact." Dkt. 55 at 3.

Expert witnesses may not testify to conclusions of law. *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988); *Scott*, 2025 WL 1909382, at *3. The determination of whether Deputy Lee acted "reasonably," "disregarded" Mr. Martinez's safety, or was "reckless" belong strictly to the jury. As Mr. Clark is not permitted to testify to legal conclusions, he will not be allowed to testify to these—or any other—legal opinions.

Specifically, the Court will preclude Mr. Clark from testifying to what was "reasonable" or "unreasonable and inappropriate" in Opinion 1, "foreseeable" in Opinion 4, "objectively unreasonable" and "reckless" in Opinion 6, what constituted "deliberate indifference" in Opinions 5 and 12, and what was "callous disregard" in Opinion 13. The Court will also preclude Mr.

---

[2] *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *4 (D. Ariz. Feb. 7, 2018) (precluding testimony as to legal conclusions); *Cooke v. City of Stockton*, No. 214CV00908KJMKJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017) ("[Mr.] Clark may not use judicially defined or legally specialized terms in providing his opinions."); *Carr v. Montgomery Cnty., Tex.*, No. CIV.A. H-13-2795, 2015 WL 5838862, at *6 (S.D. Tex. Oct. 7, 2015) (holding "[Mr.] Clark certainly would not be qualified to testify as to his interpretation of Fifth Circuit case law"); *Burke v. City of Santa Monica*, No. CV0902259MMMPLAX, 2011 WL 13213593, at *29 (C.D. Cal. Jan. 10, 2011) (precluding Mr. Clark from testifying that a taser is a deadly weapon).

4

No. 20-cv-598

Clark from testifying as to how Deputy Lee's "subjective fear" impacts the reasonableness of his use of force as in Opinion 7.

The Court will not preclude Mr. Clark from testifying to what was a "departure from . . . law (as trained)", as in Opinion 3 and 9, because these are statements as to whether Deputy Lee's "conduct was consistent with, or constituted a deviation from, standard police practices and procedures." *Scott*, 2025 WL 1909382, at *3.[3]

C

Defendants next argue that Mr. Clark's testimony about the standards to which police officers are held is inaccurate. Dkt. 47 at 24. In support of this argument, they cite to *Tenorio v. Pitzer*, No. CIV1201295JCHKBM, 2018 WL 4491167, at *8 (D.N.M. Sept. 19, 2018), wherein Mr. Clark's testimony was precluded. The statement in *Tenorio* is distinguishable. In that case, Mr. Clark testified that an officer's "apparent reliance on the most lethal option in a situation where less-lethal force was appropriate and mandated, can only be interpreted as wanton disregard for the life and safety of Mr. Tenorio." *Id.* (alterations removed). The court excluded the testimony in part because of Mr. Clark's use of "mandated" was found to potentially confuse the jury and be taken as a true legal standard. *Id.*

Mr. Clark's testimony in this case is not about the *legal* standards police officers are held to, but to the typical contents of police training. *See supra* § I(A). Except for the statements excluded in § I(B), *supra*, Mr. Clark does not suggest a legal mandate exists. When discussing the law, he clarifies that he is referring to the law "as trained." *See* Dkt. 47-2 at 8, 10. Defendants have not objected that Mr. Clark's testimony about the contents of police training is

---

[3] Defendants raise two further objections to Mr. Clark's Opinion 12 and 14, which discuss the "lack of training on use of force" and the Rogers County Sheriff's Office's "collective approval" of unconstitutional tactics. Dkt. 47 at 24; Dkt. 47-2 at 10-11. These statements are irrelevant, as they only apply to Ms. Ibarra's *Monell* claims, which are no longer asserted. *See* Dkt. 106.

inaccurate, and his testimony is free from the type of confusing testimony of what was "mandated" that the court found objectionable in *Tenorio*. So long as Mr. Clark clearly states that he is speaking of training standards, content, and Deputy Lee's compliance therewith, there will be no jury confusion. The Court will not exclude Mr. Clark's statements on police training.

### D

Defendants next argue that Mr. Clark is not qualified to render expert testimony on medical issues. Specifically, Defendants challenge Mr. Clark's opinions that photographs of Deputy Lee taken shortly after the incident are "inconsistent with someone who was a victim of an assault" and his statement that medical care given shortly after Deputy Lee shot Mr. Martinez would have been "life saving." Dkt. 47 at 26; Dkt. 47-2 at 10. Both statements fall outside the reasonable confines of an expert in police procedure.[4] Mr. Clark's time as an officer may have given him some exposure to these issues, but there is no evidence that Mr. Clark is a physician, has medical knowledge, or is otherwise qualified to opine on medical issues. His testimony to these matters will not be uniquely helpful to the jury. The Court will strike both statements.

Defendants next challenge Mr. Clark's ability to testify to "the duty to render medical care." Dkt. 47 at 26. Defendants' motion is unclear to which statement they object, but it appears to be to Mr. Clark's use of the phrase "did not provide life saving measures" as his testifying to a duty officers have to provide medical care to an individual they have shot. Dkt. 47-2 at 10. As a duty is a legal term relevant to Ms. Ibarra's negligence claims, Mr. Clark will be precluded from using the term "duty" but may otherwise testify to the lack of a medical response.

---

[4] *See Rascon*, 2018 WL 739696, at *3; *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1199 (C.D. Cal. 2015)); *LeBlanc v. City of Los Angeles*, No. CV 04-8250 SVW VBKX, 2006 WL 4752614, at *9 (C.D. Cal. 2006).

No. 20-cv-598

E

Defendants next object that Mr. Clark is not qualified to testify to bullet trajectories. Dkt. 47 at 27. Although Mr. Clark may be "very familiar with ballistic evidence," it is not apparent that ballistics falls into his area of expertise. He gives little basis for his familiarity other than his training as a detective and his leadership of a homicide investigation team. Dkt. 47-1 at 14. Neither are sufficient to qualify him as an expert witness in ballistics. *See Bermudez v. Cnty. of San Bernardino*, No. EDCV20438JGBSHKX, 2021 WL 6618857, at *7 (C.D. Cal. Dec. 6, 2021); *Speer v. Cnty. of San Bernardino*, No. EDCV 20-44 JGB (SPX), 2021 WL 4459680, at *2 (C.D. Cal. July 9, 2021). The Court will not permit Mr. Clark to testify on ballistics.

F

Defendants also object to Mr. Clark impugning the credibility of other witnesses based on his ballistics analysis. Dkt. 47 at 27; Dkt. 47-2 at 8. Specifically, Defendants object to Mr. Clark's opinion that the bullet's trajectory was "inconsistent with the testimony of Deputy Lee" and statement that Deputy Lee's testimony is "not truthful" if Ms. Mitchell's testimony is true. Dkt. 47-2 at 8.

The Tenth Circuit addressed this matter in *United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001), a case where an expert witness gave testimony about the propensity of another witness to lie to the police. The court of appeals held that an expert witness may not give "vouch[ing]" testimony directly about the credibility of another witness. *Id.* Here, as Mr. Clark may not testify to ballistics, the first objection is moot. As for the second objection, although Mr. Clark couches his opinion with the phrase "[t]aking Ms. Mitchell's testimony as true," his following point "then Deputy [sic] is not truthful in his account of any facts that could possibly justify shooting Mr. Martinez" is testimony about Deputy Lee's credibility and so is impermissible under *Adams*. Dkt. 47-2 at 8. The Court will not permit this statement or any others that comment directly on the credibility of another witness.

No. 20-cv-598

### G

Defendants next seek to exclude Mr. Clark's testimony about another shooting involving Deputy Lee. Dkt. 47 at 29-30. Mr. Clark's Opinion 14 indicates only that shooting happened and "the Sheriff concluded that the shooting was consistent with the training given to Deputy Lee and with the Department [sic] policies." Dkt. 47-2 at 11.

Evidence must be relevant to be admissible. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, the Court may exclude evidence if its probative value is outweighed by unfair prejudice, confusion, wasting time, or presenting needlessly cumulative information. Fed. R. Evid. 403.

Mr. Clark's testimony about an unrelated shooting has minimal probative value, and risks both confusing the jury and potentially creating unfair prejudice by introducing a second shooting without any context. The evidence is not relevant and unfairly prejudicial. Mr. Clark will not be allowed to testify about this second shooting.

### H

Last, Defendants object that Mr. Clark is not qualified to testify about Deputy Lee's and Mr. Martinez's body positioning. Dkt. 47 at 30. Mr. Clark briefly discusses in his report the positions of Mr. Martinez and Deputy Lee at the time of the shot, but in doing so he simply restates the testimony of Isidra Mitchell and Deputy Lee. Dkt. 47-2 at 8. He does not analyze the positions of Deputy Lee and Mr. Martinez. *Id.* As there is no expert opinion for the Court to exclude on this topic besides the already-excluded ballistics analysis, this objection is moot.

No. 20-cv-598

## II

Defendants next object to Ms. Ibarra's "police practices" expert, Mr. Noble, on the grounds that his opinions are unreliable, irrelevant, speculative, hearsay, and include inadmissible testimony. Dkt. 48.

### A

Defendants first object to three of Mr. Noble's statements as "irrelevant" and "inherently unreliable." Specifically, Defendants object to Mr. Noble's opinion that "any reasonable police officer in these circumstances would have waited for a backup officer" based on "generally accepted police practice." Dkt. 48-1 at 29. Defendants also object to Mr. Noble's statement that "the failure of deputies to carry less-lethal tools . . . may require a deputy to violate the constitutional rights of another" and to his criticism of "Deputy Lee's reckless decision making in . . . failing to engage in de-escalation techniques." *Id.* at 32-33.

Defendants argue that all three statements are irrelevant under *Marquez v. City of Albuquerque*, wherein the Tenth Circuit held that "whether [an officer] violated some well established police procedure [is] only tangentially related" to determining if an officer's actions were reasonable under the circumstances, as the analysis looks towards the reasonableness of the officer's actions based on the situation at the moment of the use of force. 399 F.3d 1216, 1222 (10th Cir. 2005) (quotation marks removed). Under the *Marquez* standard, Mr. Noble's testimony to generally accepted police practice is irrelevant to the objective reasonableness prong of a § 1984 claim, as is his testimony about the reasonableness of Deputy Lee's actions prior to his use of force. The Court precludes Mr. Noble from offering his opinions on

9

No. 20-cv-598

either Deputy Lee's violations of generally accepted police practice or the reasonableness of Deputy Lee's actions prior to his decision to use force.[5]

B

Defendants next argue that "Mr. Noble's opinions are, at best, speculative in nature and based on conjecture." Dkt. 48 at 14. Defendants cite to Mr. Noble's statements that he was unsure if a baton would have been more effective than Deputy Lee's thrust strikes, his statement that a taser would be an "appropriate tool to use" if "[Mr.] Martinez is actively resisting by punching him" and that it was "possible" for Deputy Lee to have actually avoided the event without actively punching Mr. Martinez. *Id.*; Dkt. 48-2 at 20-22.

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Mr. Noble's cited statements are speculation, but they are not the sum total of Mr. Noble's testimony. All statements that Defendants cite come from Mr. Noble's deposition responses to Defendants' counsel's questions, and are not independent evaluations. Dkt. 48 at 14. The Court will not bar Mr. Noble from testifying because he answered questions that call for speculation, but the parties may object to any speculation at trial.

C

Defendants next argue that Mr. Noble's testimony that Isidra Mitchell's ballistics testimony is "consistent with the physical evidence" is outside of Mr. Noble's expertise. Ms. Ibarra has not offered Mr. Noble as a general expert in policing, but as an expert in police practices. *See* Dkt. 48-2 at 4 (stating "I'm not a forensic expert" and agreeing he is not a ballistics expert). As Mr. Noble admits he is not qualified to opine, the Court will not permit Mr.

---

[5] Defendants do not specifically cite to these statements as giving legal conclusions, but the Court notes that Mr. Noble's use of "reasonable officer" and "reckless decision making" is also barred by the Court's ruling *infra* § II(D).

10

Noble to testify about the physical evidence and whether it comports with other witness testimony.

### D

Defendants next argue that Mr. Noble's testimony includes legal conclusions to which he cannot testify. Dkt. 48 at 17-18. Defendants point to Mr. Noble's use of "excessive" and "objectively unreasonable" in his opinion on Deputy Lee's use of force. *Id.* (quoting Dkt. 48-1 at 35). Statements that an action was "excessive" or "objectively unreasonable" are legal conclusions left to the jury. *See Anderson*, 499 F.3d at 1237. As with Mr. Clark, the Court will prohibit Mr. Noble from giving testimony using these terms or giving other legal conclusions.

### E

Last, Defendants state multiple arguments for excluding Mr. Noble's expert report from evidence. Dkt. 48 at 18-19. The report is an out-of-court statement given to prove the truth of the matter asserted, and Ms. Ibarra has not argued or suggested that a hearsay exception applies. The Court will not admit the report into evidence. *See Rimes v. MVT Servs., LLC*, No. 19-cv-00282-JFH-JFJ, 2020 WL 9074900, at *3 (N.D. Okla. July 24, 2020) (excluding expert report as hearsay).

### III

Defendants object that Mr. Clark and Mr. Noble may not both testify, as their opinions are cumulative of one another. Dkt. 47 at 30-31; Dkt. 48 at 19. Much of Mr. Clark's and Mr. Noble's testimony does not overlap. Mr. Clark does not discuss the lead-up to the events or Deputy Lee's decision making in entering the home without backup or not engaging in de-escalation. Mr. Noble and Mr. Clark's testimony do overlap as to the propriety of Deputy Lee's use of force in light of police standards, but it is not apparent if that overlap would be unduly cumulative at trial. The Court will reserve this issue

No. 20-cv-598

for trial, but the Court cautions Ms. Ibarra that she will not be allowed to have two witnesses plow the same ground.

## IV

Based on the above, Defendant's motion to exclude testimony of Roger Clark [Dkt. 47] is granted in part. Mr. Clark will not be allowed to testify to legal conclusions, medical issues, bullet trajectories, witness credibility, other shootings involving Deputy Lee, or the body positioning of Deputy Lee and Mr. Martinez.

Defendant's motion to exclude testimony of Jeffrey Noble [Dkt. 48] is granted in part. Mr. Noble may not testify to generally accepted police standards, ballistics, body positioning, or legal conclusions, and his expert report will be excluded from evidence as hearsay. The Court will reserve the issue of unduly cumulative testimony for trial.

DATED this 30th day of September 2025.

JOHN D. RUSSELL
*United States District Judge*